**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **TRANSPAC MARINE LLC,** )<br><br>    **Plaintiff,** )<br><br>**v.** )<br><br>)<br><br>**YACHTINSURE SERVICES, INC.** )<br>**a foreign Corporation,** )<br><br>    **Defendant.** ) | **CASE NO.:  1:20-cv-10115-DPW** |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR**
<u>**SUMMARY JUDGMENT**</u>

NOW COMES the Defendant/Plaintiff in Counterclaim, Yachtinsure Services, Inc. ("Yachtinsure" or "Defendant") in the above captioned matter, by and through its attorneys, Holbrook & Murphy, and respectfully submits its Memorandum of Law in Support of its Motion for Summary Judgment on Count I of the Plaintiff/Defendant-in-Counterclaim, Transpac Marine, LLC's, Complaint and Counts I, II, III, and IV of Yachtinsure's Counterclaim for Declaratory Judgment.

## INTRODUCTION

In applying for and as a condition to obtaining coverage under a marine insurance policy, Plaintiff/Defendant-in-Counterclaim, Transpac Marine, LLC ("Transpac"), represented to Yachtinsure that it would comply with Transpac's Hurricane Plan and, *inter alia*, 1) make advance reservations in the event of a named storm warning; and, 2) double the Vessel's lines in the event of a named/numbered windstorm. Defendant's Concise Statement of Material Facts in Support of its Motion for Summary Judgment ("SOF") at ¶ 17-20.

Despite these representations, Transpac did not have advance reservations at marinas and failed to double the Vessel's lines prior to Hurricane Dorian making landfall in St. Thomas, U.S. Virgin Islands ("USVI") on August 28, 2019. SOF at ¶¶ 45 and 50. Transpac's Vessel was lost during Hurricane Dorian. Docket No. at ¶ 17. Because of Transpac's misrepresentations, the risk in connection with the marine insurance policy materially increased. SOF at ¶¶ 12, 14-16, and 24-31. As a result, Yachtinsure is entitled to Judgment as a Matter of Law that it has no obligation to Transpac under the marine insurance policy and that the policy is void based on Transpac's misrepresentations and failure to adhere to the duty of utmost good faith and fair dealing.

Additionally, Transpac's claims under M.G.L. c. 93A and/or Florida Statute 627.48 are inapplicable and should be dismissed as a result of their preemption under federal admiralty law and/or the marine insurance policy's choice of law clause dictating that New York applies in the absence of a well-entrenched federal admiralty law rule. SOF at ¶ 51.

## FACTUAL BACKGROUND

The Plaintiff/Defendant-in-Counterclaim, Transpac Marine, LLC ("Transpac") is a Delaware Limited Liability Company with a principal place of business in Santa Monica, California. SOF at ¶ 1. Ralph D. Young is the sole managing member of Transpac. SOF at ¶ 2. Transpac is the owner and operator of a motor vessel named SUMMER STAR (the "Vessel"). SOF at ¶ 3.

Yachtinsure, a managing general agent with authority to underwrite insurance policies, is registered to do business in the State of Florida with a principal place of business at 401 E. Las Olas, Fort Lauderdale, Florida, 33301. SOF at ¶ 4. On April 24, 2019, Yachtinsure issued Policy No. ASI00620200 (hereinafter, the "Policy"), effective April 25, 2019, and expiring April 25, 2020, to Transpac. SOF at ¶ 5. A copy of the Policy issued by Yachtinsure to Transpac is at Docket No. 1-1. SOF at ¶ 6.

Prior to Yachtinsure issuing the Policy, on April 16, 2019, by way of its broker, Transpac sent a renewal application and a completed Hurricane Plan Questionnaire ("Hurricane Plan") to Yachtinsure. SOF at ¶ 8.

Yachtinsure utilizes Hurricane Plans, prepared by insureds, to analyze and identify steps that can be taken to reduce the likelihood of an insurance claim against a Policy. SOF at ¶ 9. After an insured, during a renewal, or prospective insured, during his/her/its application, submits a Hurricane Plan, the underwriter, on behalf of Yachtinsure, reviews the Hurricane Plan to

determine if the Hurricane Plan is sufficient and that it complies with certain conditions as a condition to Yachtinsure providing the insured with insurance coverage under the Policy. SOF at ¶ 10. Yachtinsure assumes and expects that an insured, like Transpac, will act in good faith and provide truthful representations in providing responses in its Hurricane Plan. SOF at ¶ 11. Yachtinsure permits insurance coverage under a policy and calculates risk based, in part, on representations by a company, like Transpac, contained in responses to the Hurricane Plan. SOF at ¶ 12. If a company, like Transpac, fails to submit a Hurricane Plan Yachtinsure will not move forward with the policy, or would have moved forward with a policy excluding named/numbered windstorm coverage. SOF at ¶ 13. If a company, like Transpac, submits a Hurricane Plan, a Yachtinsure underwriter uses  the Hurricane Plan to determine risk. SOF at ¶ 14. The responses to the Hurricane Plan are material representations that Yachtinsure relies upon in determining risk and calculating a premium for a given policy SOF at ¶ 15. The anticipated mooring location of a given vessel during Hurricane Season would alter a given policy premium and/or determine if Yachtinsure would even write a given insurance policy, or insure the risk. SOF at ¶ 16.

Prior to Yachtinsure issuing the Policy, in its Hurricane Plan, Transpac specifically stated that, in the event that a named windstorm warning is issued that it had "advance reservations at marinas" for the safety of its Vessel. SOF at ¶ 17.

Prior to Yachtinsure issuing the Policy, in its Hurricane Plan, Transpac specifically stated that "10 lines, ¾ inch. Nylon braid" would be used to secure the Vessel. SOF at ¶ 18. Prior to Yachtinsure issuing the Policy, on April 17, 2019, Yachtinsure requested that Transpac confirm, that "lines will be doubled in the event of a named/numbered windstorm." SOF at ¶ 19. Prior to Yachtinsure issuing the Policy, on April 19, 2019, Transpac's sole member, Ralph Young,

confirmed in writing that in the event of a named/numbered storm, mooring lines will be doubled. SOF at ¶ 20.

The Declaration on the last page of the Hurricane Plan defines a material fact as "one likely to influence acceptance of assessment of this hurricane questionnaire/plan by underwriters; if you are in any doubt as to whether a fact is material or not you must disclose it." SOF at ¶ 21. The Declaration further states that "[Transpac] understand[s] that non-disclosure or misrepresentation of a material fact may entitle underwriters to void the insurance." SOF at ¶ 22. Transpac's sole member, Ralph D. Young, signed the Declaration on the Hurricane Plan on April 15, 2019. *Id.* at ¶ 23.

Yachtinsure relied on the representations made by Transpac in its Hurricane Plan and subsequent writings. SOF at ¶ 24 Yachtinsure understood that Transpac, would, among other things, take the following actions in accordance with its Hurricane Plan:

1. have advance reservations at marinas in the event that a named storm warning is issued; and,

2. double the mooring lines in the event of a named/numbered storm.

SOF at ¶ 25.

Yachtinsure understood and intended that Transpac's representation that it had advance reservations at marinas in the event that a named storm warning was issued was a condition precedent to the Policy and insurance coverage thereunder. SOF at ¶ 26. Yachtinsure understood and intended that Transpac's representation that it would double the mooring lines in the event of a named/numbered storm was a condition precedent to the Policy and insurance coverage thereunder. SOF at ¶ 27. Yachtinsure would ***not*** have permitted Transpac's Policy as written and at the same premium, if Transpac had truthfully represented that:

1. Transpac **did not** have advance reservations at marinas in the event that a named storm warning is issued; and,

2. Transpac's **would not** double the mooring lines in the event of a named/numbered storm was a condition precedent to the Policy and insurance coverage thereunder.

SOF at ¶ 28.

In connection with insurance policies, such as the Policy issued to Transpac, Yachtinsure finds that the representations made on the Hurricane Plan materially effects the risk that an insurance claim will be made against the policy. SOF at ¶ 29. In connection with insurance policies, such as the Policy issued to Transpac, Yachtinsure finds that having advance reservations at marinas in the event that a named storm warning is issued, materially lowers the risk that an insurance claim will be made against the policy. SOF at ¶ 30. In connection with insurance policies, such as the Policy issued to Transpac, Yachtinsure finds that doubling the mooring lines in the event of a named/numbered storm materially lowers the risk that an insurance claim will be made against the policy. SOF at ¶ 31.

The Policy, which Transpac admits is "a marine policy of insurance," was in effect on April 25, 2019. SOF at ¶ 32. On August 24th, 2019, Transpac was aware that the storm, that would develop into Hurricane Dorian, was heading to the Greater Antilles. SOF at ¶ 33. On August 24, 2019, the Vessel was moored in St. Thomas Harbor, Coral Bay USVI. SOF at ¶ 34. Prior to Hurricane Dorian's arrival, Transpac never asked Crown Bay Marina if it could secure its Vessel at Crown Bay Marina. SOF at ¶ 35. On August 27, 2019, Transpac acknowledged that a Hurricane Watch was in effect. SOF at ¶ 36.

On August 28, 2019, at 11:00 a.m., Transpac realized that Hurricane Dorian may be more intense than originally anticipated. SOF at ¶ 37. On August 28, 2019, at 12:00 p.m., the Vessel's

mooring lines failed, and the Vessel started drifting. SOF at ¶ 38. When the Vessel started drifting, Transpac deployed an anchor. SOF at ¶ 39.

Within one (1) minute of setting out the anchor, the anchor entangled with the sailing vessel, GONE WITH THE WIND ("GWTW"). SOF at ¶ 40. The two (2) vessels were entangled for approximately thirty (30) minutes before separating. SOF at ¶ 41. Eventually, the Vessel grounded in Perseverance Bay around 5:30 p.m. SOF at ¶ 42.

On September 3, 2019, Transpac submitted a Claim Declaration alleging Hurricane Dorian losses. SOF at ¶ 43. Transpac stated, in its Hurricane Plan, that it had advance reservations at marinas for the safety of the Vessel in the event that a named storm warning was issued. SOF at ¶ 44. However, Transpac admitted, under oath, that it did not have advance reservations at marinas in either St. Thomas or Puerto Rico. SOF at ¶ 45. Additionally, Transpac represented that it would secure the Vessel with "10 lines, 3/4 inch…" in its Hurricane Preparation Plan. SOF at ¶ 46. In subsequent correspondence with Yachtinsure, Transpac further stated that it would double the Vessel's lines in event of a named/numbered windstorm. SOF at ¶ 47. Transpac stated, under oath, the Vessel was traditionally moored with four (4) lines. SOF at ¶ 48. Transpac stated under oath that, prior to Hurricane Dorian, it added two (2) lines to the mooring. SOF at ¶ 49. Therefore, Transpac admitted, under oath, that it failed to double its mooring lines as represented in the Hurricane Plan. SOF at ¶ 50.

The Policy is unequivocal that "any and all such litigation between [Transpac] and [Yachtinsure] is to be resolved by reference to the well-established, entrenched principles of the federal maritime law of the United States," and that "[o]nly in the event that there is not such well-established principle(s) of federal maritime law of the United States then only then shall the dispute…be resolved according to the applicable law of the State of New York." SOF at ¶ 51.

## PROCEDURAL HISTORY

On January 21, 2020, Transpac initiated the instant Action with one (1) Count for breach of contract. Docket No. 1. In its breach of contract claim, Transpac alleged, *inter alia*, that it is entitled to relief in the form of attorneys' fees pursuant to M.G.L. c. 93A and Florida Statute 627.428. *Id.*

Prior to the instant litigation, the Transpac's sole managing member, Ralph Young, provided sworn testimony in two (2) Examinations Under Oath, conducted on October 16, 2019 and November 26, 2019, respectively. SOF at ¶ 2. The Parties also exchanged certain written discovery in the instant litigation.

On May 18, 2021, the Parties participated in Mediation before the Honorable Magistrate Judge Bowler, but were unable to resolve the matter. Docket No. 22.

This Honorable Court ordered Motions for Summary Judgment to be filed by September 20, 2021. Docket No. 23.

## LEGAL STANDARD

A Motion for Summary Judgment is designed to test the sufficiency of the evidence, and should be properly granted where it is apparent that there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law. *Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett*, 477 U.S. 317, 331-32 (1986). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the burden of proof shifts to the nonmoving party, who must "produce specific facts, in suitable evidentiary form, to establish the presence of a trial-worthy issue." *Triangle Trading Co. v. Robroy Indus., Inc*., 200 F.3d 1, 2 (1st Cir. 1999) (citations and internal punctuation omitted). To withstand a Motion for Summary Judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those

offered by the moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57 (1986). In the end, "[t]o defeat summary judgment, a party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 34 (1st Cir. 2010) (quoting *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Moreover, "a party cannot ward off summary judgment with 'proffers that depend ... on arrant speculation, optimistic surmise, or farfetched inference.'" *Lang v. Wal-Mart Stores E., L.P.*, 813 F.3d 447, 460 (1st Cir. 2016) (quoting *Fragoso v. Lopez*, 991 F.2d 878, 887 (1st Cir. 1993)). Rather, "a party opposing summary judgment must 'present definite, competent evidence to rebut the motion.'" *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994) (quoting *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991)). In other words, any "evidence illustrating [a] factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." *Nat'l Amusements, Inc. v. Dedham,* 43 F.3d 731, 735 (1st Cir. 1995). Where the nonmoving party in opposition to a Motion for Summary Judgment rests its claims "merely upon conclusory allegations, improbable inferences, and unsupported speculation," an entry of Summary Judgment is appropriate. *Forestier Fradera v. Municipality of Mayaguez*, 440 F.3d 17, 21 (1st Cir. 2006).

## **ARGUMENT**

### I.     **The Policy is a maritime contract triggering admiralty jurisdiction and which should be construed by the federal admiralty law.**

The Policy at issue in this action is a marine insurance policy because it provides insurance coverage for Transpac's Vessel and the dispute is maritime in nature. *Atlantic Specialty Ins. Co. v. Karl's Boat Shop, Inc.*, 480 F.Supp.3d 322, 331-333 (holding that insurance policies for vessels "are indisputably maritime" and marine in nature because they insure against

marine peril); *Folksamerica Reinsurance Co. v. Clean Water of N.Y., Inc.*, 413 F.3d 307, 312 & 317 (2d. Cir. 2005). A marine insurance policy is a maritime contract. *Catlin at Lloyd's v. San Juan Towing & Marine,* 778 F.3d 69, 80–82 (1st Cir. 2015). "The propriety of maritime jurisdiction over a suit involving a marine insurance policy is unquestionable." *Windsor Mount Joy Mut. Ins. Co. v. Giragosian*, 57 F.3d 50, 54 (1st Cir. 1995); *see Northern Assur. Co. of America v. Keefe*, 845 F.Supp.2d 406, 412 (D. Mass. 2012) (holding that "'[s]uits on maritime insurance policies are classic examples of matters within federal maritime jurisdiction'") (quoting *Central Int'l Co. v. Kemper Nat'l Ins. Cos.*, 202 F.3d 372, 373 (1st Cir. 2000)). <u>Indeed, Transpac admits that the Policy is a "marine policy of insurance."</u> SOF at ¶ 24.

The interpretation of a marine insurance contact is a question of law for the Court. *Lloyd's of London v. Pagan Sanchez*, 539 F.3d 19, 22 (1st Cir. 2008). In "marine insurance contract cases, [the Court]…appl[ies] federal maritime rules that are established and settled; otherwise [the Court] look[s] to state law." *Catlin at Lloyd's*, 778 F.3d at 80. Federal maritime law enshrines two (2) established and settled doctrines that "excuse an insurer from paying on a policy where the insured misrepresented facts" and enable an insurer to void an insurance policy at its election. *QBE Seguros v. Morales-Vazquez,* CV 15-2091 (BJM), 2017 WL 5479458, at *2 (D.P.R. Nov. 14, 2017) (citing *Catlin at Lloyd's*, 778 F.3d at 75 n. 6). These doctrines include the breach of the duty of *uberrimae fidei* and the breach of the warranty of truthfulness. *QBE Seguros*, 2017 WL 5479458, at *2.

**II.     Transpac's breach of the duty of *uberrimae fidei*, or the duty of utmost good faith and fair dealing, allows Yachtinsure to void the Policy.**

The duty of *uberrimae fidei*, or the duty of utmost good faith and fair dealing, required Transpac to "disclose to [Yachtinsure] all known circumstances that materially affect

[Yachtinsure's] risk." *Windsor Mount Joy Mut. Ins. Co.*, 57 F.3d at 54; *QBE Seguros v. Morales-Vazquez*, 986 F.3d 1, 4-5 (1st Cir. 2021)

Transpac represented to Yachtinsure that it had advance reservations at marinas in the event that a that a named storm warning is issued; however, it did not. SOF at ¶¶ 17 and 45. In fact, during his second Examination Under Oath, Ralph Young, Transpac's sole managing member testified under oath that he never contacted any marinas. SOF at ¶ 45. Additionally, in its Hurricane Plan, Transpac stated that the Vessel would be secured with "10 lines, ¾ inch. Nylon braid" and that lines would be doubled in the event of a named/numbered windstorm. SOF at ¶¶ 46-47. However, Transpac failed to double the lines prior to and during Hurricane Dorian. SOF at ¶¶ 48-50.

Yachtinsure properly voided coverage because "[Transpac] fail[ed] to disclose to [Yachtinsure] all circumstances known to [Transpac] and unknown to [Yachtinsure] which 'materially affect [Yachtinsure's] risk,' [Yachtinsure] may void the [Policy] at its option." *Catlin at Lloyd's*, 778 F.3d at 83; *QBE Seguros*, 986 F.3d 1, 4-5, 11 (holding that "[u]nder the doctrine, an insurer may void a marine insurance policy if its insured fails to disclose 'all circumstances known to the insured and unknown to the insurer' that materially impact the insurer's risk calculus"); SOF at ¶¶ 24-31.

### A.   Transpac made misrepresentations of facts to Yachtinsure in applying for the Policy.

The Policy is void under federal admiralty law because Transpac made misrepresentations of fact and violated the doctrine of *uberrimae fidei* in the Hurricane Plan that it submitted to Yachtinsure to procure insurance. SOF at ¶¶ 17, 24-31, and 44-50. The misrepresentations directly affected Yachtinsure's decision to provide insurance coverage and the amount of premiums charged. SOF at ¶¶ 17, 24-31, and 44-50.

Transpac's material misrepresentations include, but are not limited to, its failure to make advance reservations at marinas and its failure to use the number of lines it represented it would use to secure the Vessel in the event of inclement weather. SOF at ¶¶ 17, 24-31, and 44-50.

The Policy is void because, despite its representations that it did, Transpac did not have "advance reservations" at a marina before Hurricane Dorian made land fall in St. Thomas. SOF at ¶ 45. In its Hurricane Plan, Transpac specifically stated that, in the event that a named windstorm warning is issued that it had "advance reservations at marinas" for the safety of its Vessel. It didn't.

> 19.  What arrangements have you made for the safety of your vessel in the event that a named storm warning is issued?
>
> Constant weather watch and advance reservations at marinas

SOF at ¶¶ 17 and 44-45.

The below statement under oath confirms that there is no dispute that Transpac did not have advance reservations at marinas in the event that a named storm warning is issued:

> **Q.     With regard to the advanced reservations at marinas in advance of Dorian, did you have any advanced reservations at marinas either in St. Thomas or Puerto Rico?**
>
> **A.     No.**

SOF at ¶ 45.

Section 19 of the Hurricane Plan requests: "What arrangements *have you made* for the safety of your vessel in the event that a named storm warning is issued?" SOF at ¶ 17 (our emphasis added). The question asks *what actions a policy holder took*, it does not ask *what actions a policy holder will* take in the event of a named storm.

Transpac's representation that it had "advance reservations" at a marina, when it in fact did not, is a material misrepresentation which voids the Policy. SOF at ¶28. If Yachtinsure knew

that Transpac did not have marina reservations and that the Vessel would be on a mooring during a "named windstorm" Yachtinsure would have "either charge[d] a higher premium or refuse[d] to issue the insurance policy at all." *Grande*, 436 F.3d at 282; SOF at ¶¶ 9-16, 28-31, 44-50.

Yachtinsure's decision to insure Transpac materially relied upon Transpac's Hurricane Plan representation that it had advance reservations in a marina in the event that a named windstorm warning was issued. SOF at ¶¶ 9-16, 28-31, 44-50.Transpac's representation that it had advance reservations was not true. SOF at ¶ 45. It was a misrepresentation.

There is no dispute that Transpac **did not have** advance reservations. SOF at ¶ 45. In fact, Transpac did not contact any marinas to secure a berth in the event that a named storm warning was issued.

> Q. …With regard to the advanced reservations at marinas in advance of Dorian, did you have any advance reservations at marinas either in St. Thomas or Puerto Rico?
>
> **A. No.**
>
> Q. Okay. And did you – I mean, I understand that you didn't have any, but did you contact any to see if there were able to take your vessel on?
>
> **A. Well, again, the only marina that was listed in the hurricane plan was Puerto del Ray. And no, I did not contact them prior to the arrival of Dorian.**
>
> Q. Okay. And why not?
>
> **A. Because Fajardo and Puerto Rico was expected to be right in the path of Dorian up until the 27th or so of August.**
>
> Q. Okay. And what about any of the local St. Thomas marinas?
>
> **A. I did not contact them as a I previously said.**

SOF at ¶ 45.

Transpac's misrepresentation regarding advance reservations at marinas is a violation of

the doctrine of *uberrimae fidei* and voids the Policy.

Transpac further represented that it would secure the vessel with "10 lines, 3/4 inch…" in its Hurricane Plan.

```
15. How many lines are going to be used to secure the vessel and
    what is the diameter and material of those lines?
      10 lines, 3/4 inch. Nylon braid
```

SOF at ¶ 18.

Yachtinsure specifically requested that Transpac confirm that "lines will be doubled in the event of a named/numbered windstorm." SOF at ¶ 19. Again, in reliance upon Transpac's representation (or misrepresentation), in writing, that it would double the lines, Yachtinsure issued the Policy. SOF at ¶¶ 20, 24-31.

Despite Transpac's representation, or misrepresentation as is the case, in Section 15 of the Hurricane Plan and subsequent correspondence, the Vessel was secured to its mooring with six (6) lines when Hurricane Dorian made landfall in the USVI. SOF at ¶¶ 48-50. Transpac alleges that the ten (10) lines referenced in the Hurricane Plan were for mooring the Vessel to a berth in a marina and not on a mooring ball.  Even crediting Transpac's testimony, it still failed to adhere to the Hurricane Plan because it did not "double the lines." SOF at ¶¶ 48-50. In other words, Transpac testified that it traditionally used four (4) lines when securing to the mooring in Crown Bay and added two (2) additional lines prior to Hurricane Dorian. SOF at ¶¶48-50. If Transpac had six (6) lines secured to the mooring, as it testified, then it failed to "double the lines."

If Transpac did not confirm that it would double its mooring lines, Yachtinsure would clearly have "either charge[d] a higher premium or refuse[d] to issue the insurance policy at all." *Grande*, 436 F.3d at 282; SOF at ¶¶ 9-31 and 46-50.

The Policy is clear that it is void, in its entirety, if Transpac misrepresented any material fact or circumstance related to the insurance. Transpac, *inter alia*, misrepresented that it had advance reservations at marinas and would double the Vessel's in the event of a named/numbered storm. Transpac's misrepresentations are clear and are grounds for Yachtinsure to void the policy in its entirety.

### B. Transpac's intent in making these misrepresentations is irrelevant; all that matters is that Transpac made a misrepresentation.

Transpac's intent in making its misrepresentations is irrelevant. Indeed, "the misrepresentation of material fact does not need to be intentional; it could occur due to the insured's 'fraud, negligence, accident, or mistake.'" *Catlin (Syndicate 2003) at Lloyd's v. San Juan Towing & Marine Services, Inc.*, 974 F. Supp. 2d 64, 78 (D.P.R. 2013) (internal quotations omitted). In other words, "[u]nder the doctrine of *uberrimae fidei,* it does not matter whether [the insured] omitted the information on the basis of neglect, ignorance or malice." *St. Paul Fire and Marine Ins. Co. v. Halifax Trawlers, Inc.*, 495 F. Supp. 2d. 232, 240 (D. Mass. 2007). "If the information is material, it must be disclosed," and no excuse, weak or strong, is acceptable. *Id.*

### C. Transpac's misrepresentations to Yachtinsure in applying for the Policy were misrepresentations of material facts.

If the outcome of a fact will determine whether "a prudent and intelligent insurer…will accept a risk," that fact is material. *Catlin at Lloyd's*, 778 F.3d at 82 (internal quotations omitted); *QBE Seguros*, 986 F.3d at 11 ("[m]ateriality is to be gleaned by evaluating the likely impact of facts that may influence a prudent insurer when considering whether to issue a particular policy.") An insured makes a misrepresentation or omission of a material fact, if it misrepresents or omits a fact, which, if the truth regarding same were revealed, would have caused the insurer to either charge a higher premium or refuse to issue the insurance policy at all.

*Grande v. St. Paul Fire & Marine Ins. Co.*, 436 F.3d 277, 282 (1st Cir. 2006); *see RLI Ins. Co. v. JDJ Marine, Inc.*, No. 07-CV-9546, 2012 WL 3765026, at *5 (S.D.N.Y. Aug. 29, 2012) (holding that "a material omission exists where the insurer would decide to not issue a policy…if it was aware of the insured's nondisclosure"); *see also Sun Mut. Ins. Co. v. Ocean Ins. Co.*, 107 U.S. 485, 510–511 (1883) (holding that "when any circumstance is withheld, however slight and immaterial it may have seemed to himself, that, if disclosed, would probably have influenced the terms of the insurance, the concealment vitiates the policy").

The undisputed evidence demonstrates that Yachtinsure would ***not*** have permitted Transpac's Policy and/or would have charged higher premiums, if Transpac had truthfully represented that:

      a)  Transpac ***did not*** have advance reservations at marinas in the event that a named storm warning is issued; and,

      b)  Transpac's ***would not*** double the mooring lines in the event of a named/numbered storm was a condition precedent to the Policy and insurance coverage thereunder.

SOF at ¶¶ 9-16, 26-31.

Indeed, this "evidence of actual reliance [as demonstrated above and in the SOF] indicates materiality." *Atlantic Specialty Ins. Co*., 480 F.Supp. at 338. As such, Transpac made misrepresentations of material facts, and Yachtinsure is entitled to void the Policy.[1]

---

[1] However, even if the Court did not find actual reliance on Transpac's misrepresentation of fact in Yachtinsure's issuance of the Policy, which is contrary to undisputed facts outlined above, this does not preclude entry of Summary Judgment as the First Circuit does not require actual reliance as an element of *uberrimae fidei*. *Atlantic Specialty Ins. Co.*, 480 F.Supp.3d at 341; *QBE Seguros*, 986 F.3d at 8 (holding that "we have never held that actual reliance is a necessary prerequisite for an insurer to void a marine insurance policy under the doctrine of uberrimae fidei" and "that the materiality of a false statement or an omission, without more, provides sufficient ground for voiding such a policy").

### III. Transpac's breach of the warranty of truthfulness also allows Yachtinsure to void the Policy.

A breach of the warranty of truthfulness is another established and settled federal maritime law doctrine that enables Yachtinsure to void the Policy. *QBE Seguros*, 2017 WL 5479458, at *2 (citing *Catlin at Lloyd's*, 778 F.3d at 75 n. 6).

"To prove a breach of the warranty of truthfulness, the insurer must show that the insured misrepresented a fact." *QBE Seguros*, 2017 WL 5479458, at *2. "Under maritime law, 'a breach of a promissory warranty in a maritime insurance contract excuses the insurer from coverage.'" *Maclean v. Travelers Ins. Co.*, 299 F.Supp.3d 231, 234 (D. Mass. 2017) (quoting *Lloyd's of London*, 539 F.3d at 24). The First Circuit "held that '[t]he prevailing view, both in federal law and state maritime insurance law, is that a breach of a [promissory] warranty will excuse the maritime insurer from payment regardless of any causal connection to the loss.'" *Northern Assurance Co. of America v. Keefe*, 845 F.Supp.2d 406, 414 (D. Mass. 2012) (Woodlock, D.J.) (*quoting Lloyd's of London*, 539 F.3d at 21).

The Policy, on page 2, alerts the insured to, *inter alia*, certain "Policy Terms and Conditions," or promissory warranties contained in Section C of the Policy. SOF at ¶ 52. In Section C of the Policy, it states "[t]he following terms and conditions apply to all sections and coverages provided by this Yacht policy," and the Policy lists, *inter alia*, the following condition precedent to coverage under the Policy:

> 2) *MISREPRESENTATION, CONCEALMENT OR FRAUD*: The entire Policy will be ***VOID*** IF, in connection with [Transpac's] insurance application, whether before or after a loss, occurrence or event, any named insured or operators has:
>
> > 2.1 Misrepresented or failed to disclose any material fact or circumstance or made any false statement related to this insurance:
> >
> > OR

2.2 Engaged in fraudulent conduct

SOF at ¶ 53.

Interpreting the plain language of the Policy, it is clear the Policy includes a warranty of truthfulness. As outlined in Section II (A-C) *supra*, because Transpac misrepresented facts, which materially affected Yachtinsure's decision to provide insurance coverage with the Policy, Yachtinsure made misrepresentations of material fact. These misrepresentations of material fact also breached the warranty of truthfulness and the promissory warranty contained in Section C of the Policy. As a result, Yachtinsure is also entitled to void the Policy on these grounds.

**IV.    Transpac's Claims for Violations of M.G.L. c. 93A and Florida Statute 627.428 are preempted by the federal maritime law of the United States or precluded by the contractually agreed choice of law clause in the Policy.**

The Policy is unequivocal that "any and all such litigation between [Transpac] and [Yachtinsure] is to be resolved by reference to the well-established, entrenched principles of the federal maritime law of the United States," and that "[o]nly in the event that there is not such well-established principle(s) of federal maritime law of the United States then only then shall the dispute…be resolved according to the applicable law of the State of New York." SOF at ¶ 51.

**A.    Breach of Contract Claims filed under the guise of M.G.L. 93A or Florida Statute 627.428 are preempted by the federal maritime law of the United States.**

Transpac alleges that Yachtinsure breached a maritime contract. Docket No. 1. Maritime law has long applied to a "standard contractual breach." *Southworth Mach. Co. v. F/V Corey Pride*, 994 F.2d 37, 42 (1st Cir. 1993) (holding that the plaintiff's breach of its express warranty for parts and workmanship incident to the repair of a ship was a standard contractual breach to which maritime law has always applied and which preempted M.G.L. c. 93A damages).[2]

---

[2] While the undersigned is aware of this Court's decision in *MT BALTIC COMMANDER Schiffahrtsgesellschaft MBH & Co. KG v. Massachusetts Port Authority*, 918 F.Supp.2d 105 (D. Mass. 2013), that case is distinguishable as it addresses M.G.L. c. 176D and a third-party tort claim, and does not address, like here, a standard first-party

Additionally, in *Rev-Lyn Contracting Co. v. Patriot Marine, LLC*, 760 F.Supp.2d 162, 170 (D. Mass. 2010), this Court specifically has held that "Mass. Gen. Laws ch. 93A [] is inapplicable to [a mere alleged breached of contract case], as it is preempted by substantive general maritime law." *See also* 52 MAPRAC § 2.5 (stating that "federal maritime law preempts c. 93A awards of attorneys fees to prevailing party").[3]

### B. Transpac's breach of contract claim referencing M.G.L. 93A and Florida Statute 627.428 is precluded by the contractually agreed New York choice of law clause.

*Supra*, the Policy dictates that this Court apply "the well-established, entrenched principles of the federal maritime law of the United States," and failing any such maritime law, refer to the "law of the State of New York." In a case like this, or "when parties agree that 'contract related' claims will be tried under [federal maritime law and/or the laws of the State of New York] they do not mean that a claim of 'serious' or 'rascal-like' breach of contract, [like under M.G.L. c. 93A or Florida Statute 627.428] will be tried under the law of Massachusetts [or Florida]." *Northeast Data Sys., Inc. v. McDonnell Douglas Computer Sys., Co.* 986 F.2d 607, 610 (1st Cir. 1994); *Great Lakes Insurance SE v. Andersson*, ---F.Supp.3d---, 2021 WL 2542489

---

breach of contract claim under a marine insurance contract for which federal admiralty law provides remedies. *See Southworth Mach. Co.*, 994 F.2d at 42 (holding that a claim for a "standard contractual breach" is a claim "to which maritime law has always applied" and that applying M.G.L. c. 93A to such a claim would "be[] inconsistent with maritime law"). Additionally, please note that Transpac alleged no claims under M.G.L. c. 176D against Yachtinsure. Docket No. 1.

[3] Even if this Court found M.G.L. c. 93A applicable here, which Yachtinsure disputes, this is not a case for the imposition of such damages as this case is simply a contract dispute, and it is well established under M.G.L. c. 93A case law that mere breaches of a contract, without more, do not violate M.G.L. c. 93A. *Pepsi Cola Metro Bottling Corp. v. Checkers Inc.* 754 F.2d 10 (1st Cir. 1985). The conduct proscribed by M.G.L. c. 93A is not simply a failure to fulfill business obligations or a violation of a contract term but acts which are deceptive, unfair, fraudulent or torturous in nature. *Worldwide Commodities, Inc. v. J. Amicone Co.,* 1991 Mass.App.Ct. Div. 157 (1991). Thus, a dispute as to whether money or performance is owed is not the stuff of which a M.G.L. c. 93A claim is made. *Duclersaint v. Federal Nat'l Mortgage Assoc.*, 427 Mass. 809 (1998); s*ee also Framingham Auto Sales v. Worker's Credit Union*, 41 Mass.Appt.Ct. 416 (1996) (mere breach of legal obligation under commercial law without more does not amount to an unfair, deceptive practice); *Community Builders v. Indian Motorcycle Assoc.,* 44 Mass.App.Ct. 537 (1998) (mere nonpayment of debt not enough for unfair deceptive practice under Chapter 93A).

(D. Mass. June 21, 2021) (holding that similar choice of law clause dictates that the New York law applies and barred an insured's M.G.L. c. 93A/176D claims against an insurer).

Additionally, even if Transpac's M.G.L. c. 93A or Florida Statute 627.428 claims were treated as tort claims (which is denied and Transpac has not even alleged as it made a "Breach of Contract" claim citing to the above referenced statutes), a choice of law analysis would dictate that Massachusetts and Florida law does not apply. "In choice of law matters, Massachusetts looks to its established functional choice of law principles and to the Restatement (Second) of Conflict of Laws (the Restatement) with which those principles are generally in accord." *Chesebro v. Commerce Ins. Co.*, No. 17-cv-12074-IT, 2018 U.S. Dist. LEXIS 220161, at *9 (D. Mass. July 18, 2018). Applying this analysis, the law of the state where the injury or incident occurred will apply unless Massachusetts has a more significant relationship to the parties or occurrence. *Id.* Here, there is no allegation or evidence that any injury, incident, or damages occurred in Massachusetts or Florida. Therefore, it is clear that Massachusetts and Florida do not have the requisite relationship to the instant dispute required to apply M.G.L. c. 93A or Florida Statute 627.428, and the Court should apply New York law in the absence of any "well-established, entrenched principles of the federal maritime law of the United States."

Lastly, because "New York…limits recovery for violation of breach of contract or the covenant of good faith and fair dealing to consequential damages determined by a party's reasonably foreseeable harm," and does not allow for recovery of attorneys' fees when not allowed by contract or statute, Transpac's claim that it "is entitled to recover reasonable attorneys' fees from the Defendant" "[p]ursuant to Massachusetts Law, Chapter 93A and Florida Statute  627.428" should be denied in its entirety. *Bi-Economy Market, Inc. v. Harleysville Ins. Co. of New York*, 886 N.E.2d 187, 193-94 (N.Y. App. Ct. 2008); Docket No. 1.

## CONCLUSION

WHEREFORE, Defendant/Plaintiff-in-Counterclaim, Yachtinsure Services, Inc., prays that this Court grant its Motion for Summary Judgment, and enter Judgment for Defendant/Plaintiff-in-Counterclaim, Yachtinsure Services, Inc., on Count I of the Plaintiff/Defendant-in-Counterclaim, Transpac Marine, LLC's Complaint and Counts I, II, III, and IV of Defendant/Plaintiff-in-Counterclaim, Yachtinsure Services, Inc.'s Counterclaim for Declaratory Judgment, and:

1) Enter a Declaratory Judgment declaring that Defendant/Plaintiff-in-Counterclaim, Yachtinsure Services, Inc., has no obligations to Plaintiff/Defendant-in-Counterclaim, Transpac Marine, LLC, under the insurance policy;

2) Enter a Declaratory Judgment declaring that the insurance policy is void because of misrepresentations of material facts by Plaintiff/Defendant-in-Counterclaim, Transpac Marine, LLC, to Defendant/Plaintiff-in-Counterclaim, Yachtinsure Services, Inc., in the insurance policy application;

3) Enter a Declaratory Judgment declaring that the Policy is void under the doctrine of *uberrimae fidei* because Plaintiff/Defendant-in-Counterclaim, Transpac Marine, LLC, failed to disclose to Defendant/Plaintiff-in-Counterclaim, Yachtinsure Services, Inc., all known circumstances that would materially affect Defendant/Plaintiff-in-Counterclaim, Yachtinsure Services, Inc.'s risk in the Policy application;

4) Enter a Declaratory Judgment declaring that the insurance policy does not provide coverage for any of Plaintiff/Defendant-in-Counterclaim, Transpac Marine, LLC's claims against Defendant/Plaintiff-in-Counterclaim, Yachtinsure Services, Inc.;

5) Enter a Declaratory Judgment declaring that Defendant/Plaintiff-in-Counterclaim, Yachtinsure Services, Inc., has no duty to provide Plaintiff/Defendant-in-Counterclaim, Transpac Marine, LLC, with a defense and indemnity for third-party claims against Plaintiff/Defendant-in-Counterclaim, Transpac Marine, LLC; and,

6) Enter a Judgment dismissing Plaintiff/Defendant-in-Counterclaim, Transpac Marine, LLC's claims pursuant to M.G.L. c. 93A or Florida Statute 627.48 against Defendant/Plaintiff-in-Counterclaim, Yachtinsure Services, Inc.

Respectfully Submitted,
Defendant, Yachtinsure Services, Inc.
By its attorneys,

HOLBROOK & MURPHY

*/s/ Samuel B. Blatchley*
Robert J. Murphy BBO# 557659
Samuel P. Blatchley BBO# 670232
Daniel C. Kelley BBO# 703555
Holbrook & Murphy
238-240 Lewis Wharf
Boston, MA 02110
(617) 428-1151
rmurphy@holbrookmurphy.com
sblatchley@holbrookmurphy.com
dkelley@holbrookmurphy.com

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

I, Samuel P. Blatchley, counsel for the Defendant hereby certify, pursuant to L.R. 7.1(a)(2), that I have conferred with counsel for the Plaintiff and understand that the Plaintiff opposes the relief sought in this Motion.

*/s/ Samuel P. Blatchley*
Samuel P. Blatchley BBO# 670232
Holbrook & Murphy
238-240 Lewis Wharf
Boston, MA 02110
(617) 428-1151
sblatchley@holbrookmurphy.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2021, I electronically filed the within document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Samuel P. Blatchley*
Samuel P. Blatchley BBO# 670232
Holbrook & Murphy
238-240 Lewis Wharf
Boston, MA 02110
(617) 428-1151
sblatchley@holbrookmurphy.com