UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| **TRANSPAC MARINE LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-10115-DPW |
| | ) | |
| **YACHTINSURE SERVICES, INC.** | ) | |
| a foreign Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT, YACHTINSURE SERVICES, INC.'S, OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Defendant/Plaintiff in Counterclaim, Yachtinsure Services, Inc. ("Yachtinsure" or "Defendant"), in the above captioned matter, by and through its undersigned attorneys, Holbrook & Murphy, and respectfully serves its Opposition to the Plaintiff, Transpac Marine, LLC's ("Plaintiff" or "Transpac") Motion for Summary Judgment at Docket No. 24.

In support of its Opposition the Defendant further relies on the accompanying Memorandum of Law, its response to the Plaintiff's Statement of Undisputed Facts, the Defendant's Concise Statement of Facts in support of its Motion for Summary Judgment at Docket No. 27, and the Defendant's Memorandum of Law in Support of its Motion for Summary Judgement at Docket No. 26, all of which are incorporated by reference herein.

## INTRODUCTION

Transpac's Motion for Summary Judgment is simply a red-herring meant to divert the Court's attention from the fact that Transpac clearly "[m]isrepresented or failed to disclose [a] material fact" AND/OR "made a false statement related to this insurance, [Yachtinsure Policy ASI00620200 ("the Policy")]," such that, *inter alia*, Transpac violated a condition precedent to

the Policy, breached the warranty of truthfulness, and violated the doctrine of *uberrimae fidei* under applicable law, and this Honorable Court should properly void the Policy on any one of these grounds.

The Policy includes a clear "Policy Term[] and Condition[]" that "[t]he entire policy will be **VOID**[1] if, in connection with [Transpac's] insurance application, whether before or after a loss, occurrence or event, any named insured or operator has:"

1) "Misrepresented or failed to disclose any material fact or circumstance;" or

2) "made any false statement related to this insurance…"

Docket No. 1-1 at p. 5.

Also, the Hurricane Plan states:

1) "[t]his hurricane plan and ***the information provided in connection therewith contain statements upon which underwriters will rely in deciding to accept this insurance***." Docket No. 28-2 (our emphasis added);

2) :Should a contract of insurance be concluded ***this hurricane questionnaire will form the basis of the insurance***" Docket No. 28-2 (our emphasis added);

3) defines a ***material fact*** as "***one likely to influence acceptance of assessment of this hurricane questionnaire/plan by underwriters***; if you are in any doubt as to whether a fact is material or not you must disclose it" Docket No. 28-2 (our emphasis added); and,

4) that "[Transpac] understand[s] that non-disclosure or misrepresentation of a material fact may entitle underwriters to void the insurance" Docket No. 28-2.

Transpac's sole member, Ralph D. Young, signed the Declaration on the Hurricane Plan on April 15, 2019. Docket No. 28-2.

*Supra*, Yachtinsure made crystal clear on numerous occasions that it would rely upon the information submitted in Transpac's insurance application and Hurricane Plan in providing

---

[1] Bolding and Italicizing in the original

insurance and that providing truthful information in connection same was a condition precedent Policy coverage. Docket No. 28 at ¶¶ 24 through 28; Docket No. 1-1 at p. 5; Docket No. 28-2

Transpac admits that "[p]rior to Yachtinsure issuing the Policy…Transpac was required to and sent a[n] [insurance] renewal application and completed a Hurricane Questionnaire ("Hurricane Plan") to Yachtinsure." Docket No. 27 at ¶ 8; Docket No. 29 at ¶ 8.

Transpac's Policy is "***VOID***," under the Policy's express terms, because it both "[m]isrepresented or failed to disclose [] material fact[s] or circumstance[s]" AND/OR "made [] false statement[s] related to this insurance" in its "insurance application…before…a loss, occurrence or event." Docket No. 1-1 at p. 5.

First, in its Hurricane Plan, Transpac specifically declared,[2] in the event that a named windstorm warning is issued, that it ***HAD***[3] "advance reservations at marinas" for the safety of its Vessel.

> 19. What arrangements have you made for the safety of your vessel in the event that a named storm warning is issued?
> `Constant weather watch and advance reservations at marinas`

Docket No. 28-2.

However, after the alleged loss of the Vessel, Transpac admitted under oath the representation made in the Hurricane Plan was false and that Transpac did not have advance reservations at marinas in the event that a named storm warning is issued:

> **Q.   With regard to the advanced reservations at marinas in advance of Dorian, did you have any advanced reservations at marinas either in St. Thomas or Puerto Rico?**

---

[2] Transpac's sole member, Ralph D. Young, signed the Declaration on the Hurricane Plan on April 15, 2019. Docket 27 at ¶ 23; Docket No. 29 at ¶ 23.
[3] Section 19 of the Hurricane Plan requests: "What arrangements ***have you made*** for the safety of your vessel in the event that a named storm warning is issued?" SOF at ¶ 17 (our emphasis added). The question asks ***what actions a policy holder took***, it does not ask ***what actions a policy holder will*** take in the event of a named storm.

3

```
11. What is the name, address and contact details of the marina or
    residence where the vessel is kept?
    Moored in Crown Bay, St Thomas USVI and
    Puerto del Rey, Fajardo, Puerto Rico
12. How frequently, do you or the person named above visit the
    vessel?
    Daily - live aboard
13. Who if other than the Insured, has the authority to move and or
    prepare the vessel for a storm?
    none
14. Is the insured vessel in a single slip with a neighbouring vessel?
    no
    If so what is the distance in feet between the widest beam of the
    insured vessel and the neighbouring vessel?
15. How many lines are going to be used to secure the vessel and
    what is the diameter and material of those lines?
    10 lines, 3/4 inch. Nylon braid
```

> A.   No.

Docket No. 27-13, at p. 6, line 9 through p. 7, line 6.

Second, in its Hurricane Plan, Transpac further represented that it would secure the Vessel with "10 lines, 3/4 inch…."

Docket No. 28-2.

Yachtinsure specifically requested that Transpac confirm that "lines will be doubled in the event of a named/numbered windstorm." Docket No. 27 at ¶ 19; Docket No. 27-3.

Despite Transpac's representation, or misrepresentation as is the case, in Section 15 of the Hurricane Plan and subsequent correspondence, the Vessel was secured to its mooring with six (6) lines when Hurricane Dorian made landfall in the United States Virgin Islands. Docket No. 27 at ¶¶ 48-50; Docket No. 29 ¶¶ 48-50. Transpac alleges that the ten (10) lines referenced in the Hurricane Plan were for mooring the Vessel to a berth in a marina and not on a mooring ball. Even crediting Transpac's testimony, it still failed to adhere to the Hurricane Plan because it did not "double the lines." Docket No. 27 at ¶¶ 48-50; Docket No. 29 ¶¶ 48-50. In other words, Transpac testified that it traditionally used four (4) lines when securing to the mooring in Crown Bay and added two (2) additional lines prior to Hurricane Dorian. Docket No. 27 at ¶¶ 48-50; Docket No. 29 ¶¶ 48-50. If Transpac had six (6) lines secured to the mooring, as it testified, then it failed to "double the lines."

As such, Transpac's Motion for Summary Judgment is simply a red-herring meant to divert the Court's attention. Transpac's Motion for Summary Judgment asserts two (2) main arguments:

4

      1.      Coverage was "triggered" because the loss occurred within the Policy Period; and,
      2.      Impossibility.

However, for two (2) main reasons this Court should not "take the bait" on Transpac's red-herring arguments.

First, *supra,* "coverage" was not triggered because Transpac failed to adhere to the "terms and conditions [which] appl[ied] to all sections and coverages provided by [the Policy]," and the Policy was "***VOID***" before the Hurricane Dorian and Tropical Storm Karen as Transpac "[m]isrepresented or failed to disclose [] material fact[s]" AND/OR "made [] false statements related to this insurance, [the Policy]," while applying for insurance coverage and violated a condition precedent to Policy coverage.

Second, Transpac's argument that his failures should be forgiven in light of the doctrine of impossibility misstates the law and the Policy provisions. It was not impossible for Transpac to be truthful that it did not have advance reservations at marinas or that it would ride out the storm on a mooring ball. Transpac's inability to adhere to its stated Hurricane Plan was only because Transpac lied about what it had done. That is not Yachtinsure's fault. In other words, while it may have been impossible for Transpac to get reservations at marinas as the storm was approaching or because the marinas closed for Hurricane[s], Transpac would have known that, and could have protected itself from the perils it exposed itself to, if it did what it represented to Yachtinsure it HAD done.[4]

---

[4] Indeed, under New York law "[i]t is well settled that no action for breach of contract lies where the party seeking to enforce the contract has failed to perform a specified condition precedent." *Navilia v. Windsor Wolf Road Properties Co.*, 671 N.Y.S.2d 184, 185-86 (1988) (holding that the doctrine of impossibility is only applicable where "performance of a condition is rendered impossible by an unanticipated event that could not be foreseen of guarded against in the contract").

## ARGUMENT

**I.     Transpac's breach of the warranty of truthfulness, a violation of a condition precedent to coverage under the Policy voided the Policy before Hurricane Dorian and Tropical Storm Karen**

A breach of the warranty of truthfulness is an established and settled federal maritime law doctrine that enables Yachtinsure to void the Policy. *QBE Seguros v. Morales-Vazquez*, 2017 WL 5479458, at *2 (D. Mass. Nov. 14, 2017) (citing *Catlin at Lloyd's v. San Juan Towing & Marine*, 778 F.3d 69, 75 n. 6 (1st Cir. 2015))). The warranty of truthfulness was a condition precent for the Policy.

"To prove a breach of the warranty of truthfulness, the insurer must show that the insured misrepresented a fact." *QBE Seguros*, 2017 WL 5479458, at *2. "Under maritime law, 'a breach of a promissory warranty in a maritime insurance contract excuses the insurer from coverage.'" *Maclean v. Travelers Ins. Co.*, 299 F.Supp.3d 231, 234 (D. Mass. 2017) (quoting *Lloyd's of London v. Pagan-Sanchez*, 539 F.3d 19, 24 (1st Cir. 2008). The First Circuit "held that '[t]he prevailing view, both in federal law and state maritime insurance law, is that a breach of a [promissory] warranty will excuse the maritime insurer from payment regardless of any causal connection to the loss.'" *Northern Assurance Co. of America v. Keefe*, 845 F.Supp.2d 406, 414 (D. Mass. 2012) (Woodlock, D.J.) (*quoting Lloyd's of London*, 539 F.3d at 21).

The Policy, on page 2, alerts the insured to, *inter alia*, certain "Policy Terms and Conditions," or promissory warranties contained in Section C of the Policy. Docket No. 27 Defendant's Statement of Facts in Support of its Motion for Summary Judgment ("SOF") at ¶ 52; Docket No. 1-1 p. 2. In Section C of the Policy, it states "[t]he following terms and conditions apply to all sections and coverages provided by this Yacht policy," and the Policy lists, *inter alia*, the following condition precedent to coverage under the Policy:

>   2)   *MISREPRESENTATION, CONCEALMENT OR FRAUD*: The entire Policy will be **VOID** IF, in connection with [Transpac's] insurance application, whether before or after a loss, occurrence or event, any named insured or operators has:
>
>     1.1 Misrepresented or failed to disclose any material fact or circumstance or made any false statement related to this insurance:
>
>     OR
>
>     2.2 Engaged in fraudulent conduct

SOF at ¶ 53; Docket No. 1-1 at p. 5.

*Supra*, interpreting the plain language of the Policy, it is clear the Policy includes a warranty of truthfulness. Transpac misrepresented facts, which materially affected Yachtinsure's decision to provide insurance coverage with the Policy. These misrepresentations of material fact breached the warranty of truthfulness and the promissory warranty contained in Section C of the Policy. Additionally, *assuming arguendo*, that this Court find that Transpac did not misrepresent *material* facts, it surely cannot be disputed that the Policy is also void because Transpac made a "false statement related to this insurance" in its Hurricane Plan and insurance application. As a result, Yachtinsure is entitled to void the Policy, and Transpac is not entitled to Summary Judgment for breach of contract.

    **II.**    **The Policy was void before Hurricane Dorian made landfall because the Plaintiff breached the warranty of truthfulness.**

Transpac argues that coverage under the Policy was "triggered" because the loss was caused by, *inter alia*, a named windstorm, a collision, and a stranding. However, Transpac's argument that coverage was "triggered" is irrelevant. *Supra,* in applying for insurance coverage, Transpac breached the warranty of truthfulness, violated a condition precedent to coverage under the Policy by misrepresenting to Yachtinsure that Transpac had advance reservations at marinas and therefore, the policy was void before Hurricane Dorian and Tropical Storm Karen. Indeed, coverage could not be triggered because, in fact, there was no coverage. Additionally, Transpac

7

has no cause of action for breach of contract because "[i]t is well settled that no action for breach of contract lies where the party seeking to enforce the contract has failed to perform a specified condition precedent," like Transpac has in this case. *Navilia*, 671 N.Y.S.2d at 185-86.

### III. Impossibility is not a valid defense because the Policy was void before Hurricane Dorian and Tropical Storm Karen made landfall because the Plaintiff breached the warranty of truthfulness.

Transpac's Impossibility argument fails because the Policy was void before any named storm made landfall. Transpac's impossibility argument actually supports the Defendant's position because it is clear that Transpac did not have advance reservations at marinas like Transpac said it did in the Hurricane Plan and insurance application.

Under New York law, the doctrine of impossibility is only applicable where "performance of a condition is rendered impossible by an unanticipated event that could not be foreseen of guarded against in the contract." *Navilia*, 671 N.Y.S.2d at185-86. Here, it was not impossible for Transpac to comply with the condition precedent to tell the truth in its Hurricane Plan and insurance application.

Indeed, Transpac's argument makes it abundantly clear that when Transpac submitted its Hurricane Plan it did not have advance reservations as marinas. If it did, it would not be attempting to secure same "two … days in advance of the named windstorm," and could have "foreseen or guarded" itself by making other plans approved by Yachtinsure in the Hurricane Plan, which was made part of the Policy. Docket No. 28-2 ("*this hurricane questionnaire will form the basis of the insurance*") (our emphasis added).

The Hurricane Plan questionnaire is clear:

> 19. What arrangements have you made for the safety of your vessel in the event that a named storm warning is issued?
> `Constant weather watch and advance reservations at marinas`

Docket No. 28-2 at § 19.

Section 19 of the Hurricane Plan, included above for reference, clearly asks "What arrangements ***have you made*** for the safety of your vessel in the event that a named storm warning is issued." *Id.* (our emphasis added). The Hurricane Plan language is clear, it asks what arrangements Transpac *had in place*. It does not ask what actions Plaintiff *will take* in the event that a named storm warning was issued.

Transpac's response to question 19 is clear: "… advance reservations at marinas." *Id.* Transpac *did not* represent, in its Hurricane Plan, that it would make reservations if needed or as a storm approached. Transpac represented that the reservations were in place when it submitted the Hurricane Plan to Yachtinsure. This response represented to Yachtinsure underwriters that if a named storm warning was issued, Transpac *already had* reservations at marinas. This representation was material. Docket No. 28-1.

Yachtinsure relied on Transpac's representation, and the fact that it was making a truthful and not false statement, when it assessed the risk in insuring Transpac's Vessel. Docket No. 28 at ¶ 26. Yachtinsure intended that Transpac's representation that it had "advance reservations at marinas" in the event of a named storm warning was issued was a condition precedent to the Policy and insurance coverage thereunder. Docket No. 28 at ¶ 26. In fact, Yachtinsure's Underwriter, Liam Talbot stated *inter alia* that:

> "Yachtinsure would not have permitted Transpac's Policy, or provided a policy excluding named/numbered windstorm coverage if Transpac had truthfully represented that:
>
> a) Transpac *did not* have advance reservations at marinas in the event that a named storm warning is issued. …"

Docket No. 28 at ¶ 28.

Assuming arguendo, that Transpac had advance reservations at Crown Bay Marina, which is specifically denied, and as the storm approached Crown Bay Marina forced its patrons to leave the marina, even if they had reservations, then Transpac's impossibility argument might have merit. However, that is not what happened in the instant case.

In this case, Transpac made a false statement, whether intentional or unintentional,[5] because it never contacted *any* marina when it submitted its Hurricane Plan despite its clear representation that it had advance reservations.

> Q. …With regard to the advanced reservations at marinas in advance of Dorian, did you have any advance reservations at marinas either in St. Thomas or Puerto Rico?
>
> **A. No.**

Docket No. 27-3 EUO 2 p. 6 lines 9-15.

> Q. Okay. And what about any of the local St. Thomas marinas?
>
> **A. I did not contact them as a I previously said.**

Docket No. 27-3 EUO 2 p. 7 lines 3-6.

Transpac made a false statement to obtain insurance coverage and is now trying to claim that is was impossible for it to follow the Hurricane Plan. The issue is not whether Transpac followed the Hurricane Plan or not, or if some condition made it impossible to follow the Hurricane Plan (i.e. Crown Bay Marina forcing vessels to leave before the storm), the issue is Transpac's misrepresentations and false statements, which violated a condition precedent to coverage under the Policy.

---

[5] *See, e.g., Quintero v. Geico Marine Ins. Co.*, 389 F.Supp.3d 1153, 1160 (S.D. Fla. 2019) (holding that a policy, which stated there is no coverage if the insured "has omitted, concealed, misrepresented, sworn falsely, or committed fraud in reference to any material matter relating to this insurance," "mirror[ed] the obligations imposed by *uberrimae fidei*, because "there is no requirement that any misrepresentation or omission be intentional").

Transpac's actions *during and after* Hurricane Dorian are of no significance to the breach of contract action because Yachtinsure is entitled to void the Policy for Transpac's breach of the warranty of truthfulness, which was a condition precedent for coverage. Transpac violated the doctrine of the utmost good faith and fair dealing, made material misrepresentations, and Yachtinsure is entitled to void the policy on all of these grounds. *Catlin at Lloyd's*, 778 F.3d at 83.

Therefore, the Policy was void before Hurricane Dorian made landfall, and void when Tropical Storm Karen made landfall[6] because Transpac already breached the warranty of truthfulness by making material misrepresentations, which violated a condition precedent to coverage under the Policy.

### IV. The Policy was void under New York Law and Federal Maritime Law before Hurricane Dorian and Tropical Storm Karen made landfall.

New York law entitles an insurer to rescind an insurance policy—and the policy is deemed void *ab initio*—"if it was issued in reliance on material misrepresentations." *Fid. & Guar. Ins. Underwriters, Inc. v. Jasam Realty Corp.,* 540 F.3d 133, 139 (2d Cir. 2008); *see Interboro Ins. Co. v. Fatmir,* 933 N.Y.S.2d 343, 345 (App.Div.2011).

---

[6] Yachtinsure further submits that and alleged pollution related damages sustained by Transpac as a result of Tropical Storm Karen are not covered under the Policy because Transpac failed to provide timely notice to Yachtinsure in accordance with Section F of the Policy. Section F of the Policy states, in relevant part, *If a sum insured is shown in the "Limited Pollution" section of the insuring agreement declaration page, we will extend this insuring agreement to include pollution cover provided that pollution is caused by an occurrence neither intended or expected by you which takes place in its entirety at a specific time and place during the term of this insurance, became known to you within forty-eight (48) hours of the pollution commencement and is reported to insurers in writing within five (5) days of becoming known to you.* Docket No. 1-1 p. 10. Transpac did not report the environmental cleanup of the damage from Tropical Storm Karen to Yachtinsure until Transpac's Examination Under Oath on October 16, 2019. The failure to provide timely notice to the insurers is in direct violation of Yachtinsure Policy Section F.

A misrepresentation in an application for insurance is a false "'statement as to past or present fact, made to the insurer by ... the applicant for insurance ... as an inducement to the making thereof.'" *Fid. & Guar. Ins. Underwriters,* 540 F.3d at 139 (quoting N.Y. Ins. Law § 3105(a)). "If an insurer can show that it was induced to accept an application that it might otherwise have refused it is entitled to rescind the policy." *In re WorldCom, Inc. Sec. Litig.,* 354 F.Supp.2d 455, 465 (S.D.N.Y.2005). In fact, "[a] misrepresentation is material if the insurer would not have issued the policy had it known the facts misrepresented." *see Interboro,* 933 N.Y.S.2d at 345. Further, "[e]ven an innocent misrepresentation, if material, will support recission." *WorldCom,* 354 F.Supp.2d at 465; *see Vella v. Equitable Life Assurance Soc'y,* 887 F.2d 388, 391 (2d Cir.1989) (holding that "[s]o long as a misrepresentation is material, it is no defense to an action for rescission that the misrepresentation was innocently made"); *Contl. Cas. Co. v. Marshall Granger & Co., LLP*, 6 F. Supp. 3d 380, 389–90 (S.D.N.Y. 2014) (holding that "if the Policy was procured through a. material misrepresentation, Continental may rescind the Policy as to all insureds — even those insureds with no knowledge of and misrepresentation), *aff'd sub nom. Contl. Cas. Co. v. Boughton*, 695 Fed. Appx. 596 (2d Cir. 2017).

The rule under federal maritime law is the same. Under federal maritime law, if the outcome of a fact will determine whether "a prudent and intelligent insurer…will accept a risk," that fact is material. *Catlin at Lloyd's*, 778 F.3d at 82 (internal quotations omitted). An insured makes a misrepresentation or omission of a material fact, if it misrepresents or omits a fact, which, if the truth regarding same were revealed, would have caused the insurer to either charge a higher premium or refuse to issue the insurance policy at all. *Grande v. St. Paul Fire & Marine Ins. Co.*, 436 F.3d 277, 282 (1st Cir. 2006); *see RLI Ins. Co. v. JDJ Marine, Inc.*, No. 07-CV-

12

9546, 2012 WL 3765026, at *5 (S.D.N.Y. Aug. 29, 2012) (holding that "a material omission exists where the insurer would decide to not issue a policy…if it was aware of the insured's nondisclosure"); *see also Sun Mut. Ins. Co. v. Ocean Ins. Co.*, 107 U.S. 485, 510–511 (1883) (holding that "when any circumstance is withheld, however slight and immaterial it may have seemed to himself, that, if disclosed, would probably have influenced the terms of the insurance, the concealment vitiates the policy").

The "operative" date of the Policy was April 25, 2019 to April 25, 2020 and is indicated on the Policy's Declaration page. Docket No. 24-2 at item 2. Additionally, the Policy Declaration page shows that the Policy was issued on April 24, 20219. Docket No. 24-2.

*It is undisputed that Transpac made the representations in its insurance renewal application prior to the issuance of the Policy, or April 16, 2019, and prior to the operative date of the Policy, or* April 25, 2019. Docket No. 28 at ¶ 16. It is also undisputed

As a result, there can be no dispute that "[Transpac] reasonably should have known that [Yachtinsure] was proceeding [with the Policy] in reliance on the statements [Transpac] made in [Transpac's renewal application and Hurricane Plan]." *RLI Ins. Co. v. Santos*, 746 F.Supp.2d 255, 269 (D. Mass. 2010). Additionally, Yachtinsure confirms that it was proceeding with the Policy on the same understanding. Docket No. 28 at ¶¶ 26-32.

### IV. Transpac's Arguments regarding the Defendant's Counterclaims and Affirmative Defenses are not relevant to the Motion for Summary Judgment.

Transpac wastes a lot of paper. in its Motion for Summary Judgment arguing that Yachtinsure's Counterclaims should be dismissed pursuant to Fed. R. Civ. P 12(b)(1) and that various affirmative defenses should be stricken. Transpac's arguments again fail to address the real issue before the Court and are solely used as obfuscation.

13

The Defendant moved for Summary Judgment on Transpac's sole breach of contract claim as well as the Defendant's Counterclaims. The Policy was void because Transpac made material misrepresentations while applying for insurance coverage, that Yachtinsure relied on, and that were conditions precedent to coverage. Yachtinsure preserved all appropriate affirmative defenses in its Answer and Counterclaim.

### V.     Alternatively, Transpac has not proven damages with specificity sufficient to allow for Summary Judgment.

Transpac has not met its heavy burden of establishing damages for the purpose of Summary Judgment. A Motion for Summary Judgment is designed to test the sufficiency of the evidence, and should be properly granted where it is apparent that there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law. *Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett*, 477 U.S. 317, 331-32 (1986).

The Defendant submits that again, Transpac's damages are not germane to the real issue. However, if the Court denies the Yachtinsure's Motion for Summary judgment, Yachtinsure submits that there remain genuine issues of fact regarding Transpac's alleged damages. Specifically, the Defendant reiterates its argument in note 2 *infra*. Alleged damages sustained by Transpac as a result of Tropical Storm Karen are not covered under the Policy because Transpac failed to provide timely notice to Yachtinsure in accordance with Section F of the Policy.

Section F of the Policy states, in relevant part:

> *If a sum insured is shown in the "Limited Pollution" section of the insuring agreement declaration page, we will extend this insuring agreement to include pollution cover provided that pollution is caused by an occurrence neither intended or expected by you which takes place in its entirety at a specific time and place during the term of this insurance, became known to you within forty-eight (48) hours of the pollution commencement and is reported to insurers in writing within five (5) days of becoming known to you.*

Docket No. 1-1 p. 10.

14

Transpac did not report the environmental cleanup of the damage from Tropical Storm Karen to Yachtinsure until Transpac's Examination Under Oath on October 16, 2019. The failure to provide timely notice to the insurers is in direct conflict with the Policy's Section F.

## **CONCLUSION**

WHEREFORE, Defendant/Plaintiff-in-Counterclaim, Yachtinsure Services, Inc., prays that this Court deny Plaintiff/Defendant-in-Counterclaim, Transpac Marine, LLC's Motion for Summary Judgment and grant Yachtinsure Services, Inc.'s Motion for Summary Judgment, and enter Judgment for Defendant/Plaintiff-in-Counterclaim, Yachtinsure Services, Inc., on Count I of the Plaintiff/Defendant-in-Counterclaim, Transpac Marine, LLC's Complaint and Counts I, II, III, and IV of Defendant/Plaintiff-in-Counterclaim, Yachtinsure Services, Inc.'s Counterclaim for Declaratory Judgment, and:

1) Enter a Declaratory Judgment declaring that Defendant/Plaintiff-in-Counterclaim, Yachtinsure Services, Inc., has no obligations to Plaintiff/Defendant-in-Counterclaim, Transpac Marine, LLC, under the insurance policy;

2) Enter a Declaratory Judgment declaring that the insurance policy is void because of misrepresentations of material facts by Plaintiff/Defendant-in-Counterclaim, Transpac Marine, LLC, to Defendant/Plaintiff-in-Counterclaim, Yachtinsure Services, Inc., in the insurance policy application;

3) Enter a Declaratory Judgment declaring that the Policy is void under the doctrine of *uberrimae fidei* because Plaintiff/Defendant-in-Counterclaim, Transpac Marine, LLC, failed to disclose to Defendant/Plaintiff-in-Counterclaim, Yachtinsure Services, Inc., all known circumstances that would materially affect Defendant/Plaintiff-in-Counterclaim, Yachtinsure Services, Inc.'s risk in the Policy application;

4) Enter a Declaratory Judgment declaring that the insurance policy does not provide coverage for any of Plaintiff/Defendant-in-Counterclaim, Transpac Marine, LLC's claims against Defendant/Plaintiff-in-Counterclaim, Yachtinsure Services, Inc.;

5) Enter a Declaratory Judgment declaring that Defendant/Plaintiff-in-Counterclaim, Yachtinsure Services, Inc., has no duty to provide Plaintiff/Defendant-in-Counterclaim, Transpac Marine, LLC, with a defense and indemnity for third-party claims against Plaintiff/Defendant-in-Counterclaim, Transpac Marine, LLC; and,

6) Enter a Judgment dismissing Plaintiff/Defendant-in-Counterclaim, Transpac Marine, LLC's claims pursuant to M.G.L. c. 93A or Florida Statute 627.48 against Defendant/Plaintiff-in-Counterclaim, Yachtinsure Services, Inc.

        Respectfully Submitted,
        Defendant, Yachtinsure Services, Inc.
        By its attorneys,

        HOLBROOK & MURPHY

        */s/ Samuel B. Blatchley*
        Robert J. Murphy BBO# 557659
        Samuel P. Blatchley BBO# 670232
        Daniel C. Kelley BBO# 703555
        Holbrook & Murphy
        238-240 Lewis Wharf
        Boston, MA 02110
        (617) 428-1151
        rmurphy@holbrookmurphy.com
        sblatchley@holbrookmurphy.com
        dkelley@holbrookmurphy.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2021, I electronically filed the within document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

        */s/ Samuel P. Blatchley*
        Samuel P. Blatchley BBO# 670232
        Holbrook & Murphy
        238-240 Lewis Wharf
        Boston, MA 02110
        (617) 428-1151
        sblatchley@holbrookmurphy.com